DILUVINA (also known as DIVINA) RAMÍREZ DE RAMÍREZ, Plaintiff and Appellee, v. NOEMI RAMÍREZ Y RAMÍREZ ET AL., Defendants, and ORISON RAMÍREZ ET AL., Defendants and Appellants.

No. 9032. Argued January. 18, 1945.—Decided January 18, 1946.

*José Sabater* for appellant Orison Ramírez. *Oscar Souffront* for appellants surnamed Ramírez-Vélez. *J. Alemañy Sosa* for appellee.

Mr. CHIEF JUSTICE TRAVIESO delivered the opinion of the court.

Diluvina Ramírez Marini, widow of Dr. Ricardo Ramírez Morales, brought suit against the persons composing the succession of the latter, to reform certain conveyances involving the acquisition of two properties which are now recorded in the name of the conjugal partnership that existed between the plaintiff and the deceased, and to have said properties recorded as belonging to her separate estate. She alleged that subsequent to the death of her father, Severiano Ramírez y Colberg, she made an agreement with her mother, Isolina Marini y Correa, whereby she would assign to the latter all her rights and interests in the estate of her father, provided that, upon the termination of the partition proceedings, her mother would transfer to her certain property representing the value of the assigned interests; on October 25, 1923, by deed No. 147, executed before Notary Miguel del Toro Colberg, her mother transferred to her a rural property; that notwithstanding such transfer was made in form as a sale

to her husband, the true object or intendment of the transaction was the payment to her of the consideration for the assignment of her hereditary rights in the estate of her father which she had made in favor of her mother; that in 1929, after the death of her mother, by deed No. 264 executed on October 15, 1929, before Notary Miguel del Toro Colberg, she assigned to her brother, David Ramírez Marini, all her rights and interests in the estate of her mother and on that same date, before the same notary and in consideration of said assignment, her brother David transferred to her husband, by deed No. 266, an urban property situated in the town of Cabo Rojo; that although in said deed it was made to appear that the latter property was transferred for a valuable consideration received from the husband of plaintiff herein, the fact is that such transfer was made in consideration of the above-mentioned assignment; that, therefore, both acquisitions were made by her separate estate, and, accordingly, plaintiff prayed for the reformation of the above-mentioned instruments, deeds Nos. 147 and 266, to the end that the properties described therein be recorded as belonging exclusively to her.

Defendant Orison Ramírez, an acknowledged natural son of the deceased husband of the plaintiff herein, and the legatees named in the will of the decedent defended the suit. They denied all the esential averments of the complaint and alleged certain special defenses. After hearing the parties, the District Court of Mayagüez dismissed the special defenses set up by the defendants and rendered judgment in favor of the plaintiff. From that judgment the defendants have taken the present appeal, assigning the commission of four errors which will be considered presently.

■ The action of the lower court in dismissing the special defense set up by the defendants in the sense that the complaint was insufficient is assigned as error. We have care-

fully read that pleading and we are of the opinion that the same contains all the necessary allegations. The error assigned is nonexistent.

█ It is urged that the lower court erred in admitting parol evidence and a private instrument to vary or alter the effects of the public instruments of conveyance involving the two properties, one rural and one urban, which were recorded as belonging to the conjugal partnership constituted by Dr. Ricardo Ramírez Morales and the plaintiff, Diluvina Ramírez.

The properties involved in this suit are presumed to be community property, inasmuch as they were acquired by the husband of the plaintiff through deeds of sale which failed to state that the same belonged to the separate estate of the wife. In order to destroy that presumption, trustworthy and authentic evidence of the separate character of the said properties would be required. In support of her complaint, the plaintiff offered oral and documentary evidence in addition to the deeds of sale mentioned above. The defendants, relying on the provisions of § 25 of the Law of Evidence, which declares inadmissible any extrinsic evidence relating to the contents of an instrument, objected to such evidence. The lower court, over the objection of the defendants, admitted the same and considered it sufficient to overcome the presumption which existed in favor of the community character of the properties. The appellants maintain that the admission of that extrinsic evidence was erroneous. After studying this question, we do not agree with the contention of the appellants, for the rule which excludes extrinsic evidence to contradict or vary the terms of a written instrument does not preclude the introduction of evidence tending to show the true nature of the transaction made. In *Nieto* v. *Torres*, 56 P.R.R. 147, this court speaking through Mr. Justice De Jesús, and quoting from 2 Jones on Evidence in Civil Cases, 4th ed. (1938), p. 951, § 446, said at page 150:

514

" . . . . The court looks beyond the terms of the instrument to the real transaction; and when that is shown to be one of security and not of sale, it will give effect to the actual contract of the parties. As the equity, upon which the court acts in such cases, arises from the real character of the transaction, any evidence, written or oral, tending to show this is admissible. The rule which excludes parol testimony to contradict or vary a written instrument has reference to *the language used* by the parties. That cannot be qualified or varied *from its natural import,* but must speak for itself. The rule *does not forbid an inquiry into the object* of the parties in executing and receiving the instrument . . . . " (Italics ours.)

This rule can not be used by the courts to suppress the truth about a transaction nor to preclude a party from proving that a certain written agreement is merely a simulation. See *Ochoteco* v. *Córdova,* 47 P.R.R. 522; *Morales* v. *Franco,* 44 P.R.R. 63;[1] and *Puig* v. *Sotomayor,* 55 P.R.R. 244, where Mr. Chief Justice Del Toro said:

"Public deeds are solemn, but not because that principle should be maintained must that which is not true be established as true. The rules of law invoked are just and tend to establish order, secure credit, and strengthen confidence, all needs for the proper development of the community, but those same rules harbour exceptions, whose scope has been settled by the courts, to allow things to be known, when it is necessary to stop those rules from working in an unjust manner. And this case is included in the exception.

---

[1] In *Nicorelli* v. *Ernesto López & Co.,* 26 P.R.R. 49, this court held that the rule set forth in § 25 of the Law of Evidence is applicable only to controversies between the parties who signed the instrument, and their privies or heirs. In the instant case, the controversy is between the wife and the heirs of one of the original parties to the contract. Is the wife a privy to a contract made by the husband, whereby the conjugal partnership acquires certain properties? If she should be thus considered, the controversy would be between a privy (the wife) and the heirs of the deceased husband, and, under the holding in the *Niccorelli* case, supra, the rule would then be applicable. But the evidence objected to is admitted on the basis of the decision in *Nieto* v. *Torres, supra.* Now, if the wife can not be considered as a privy, since the controversy involves a third person (the wife) who is not a party to the contract nor interested therein, the rule which excludes extrinsic evidence relating to a written instrument has no application, and, therefore, the objected evidence is likewise admissible.

"Simulation should not be fostered. Truth is the right way. Experience teaches what a high price is paid for deviations from this straight road that expedites and secures all transactions, but often in good faith, out of a mistaken good-will to relatives and friends, out of the wish to safeguard the interest of the weak or for·other reasons more or less explicable within a field of action that is in a certain way compatible with honesty and naked thruth, simulated acts are performed that should not be allowed to have oppressive results. The punishment should fit the crime and enough punishment is received in these cases with the uncertainty and trouble of a lawsuit."

■ It is urged that the lower court erred in dismissing the defense that the action brought was barred by reason of the fact that over 10 years had elapsed from the execution of the deeds referred to in the complaint to the filing of the latter, in accordance with the provisions of §§ 1830, 1832, and 1857 of the Civil Code. Let us see. ,

Section 1830 of the Civil Code establishes the general effects of prescription and § 1832 specifically provides that prescription operates against all kind of persons. Neither of the Sections fixes any limitation period for the action herein. Section 1857 provides:

"Ownership and other property rights in real property shall prescribe by possession for ten years as to persons present, and for twenty years with regard to those absent, with good faith and with a proper title."*

The defense of extinctive prescription can not properly be predicated upon a Section which specifically refers to acquisitive prescription or usucapion. Title XVIII, Book IV of the Civil Code, under the heading of "Prescription," deals jointly with two institutions which, although having rules in common, are nevertheless quite different—the extinctive or liberating prescription and the acquisitive prescription or

---

*A more adequate English translation of the original Spanish text of this Section would seem to be: "Ownership and other real rights shall prescribe by possession in good faith and under a just title for ten years as between persons present, and for twenty years as between absentees." See Fisher, The Civil Code of Spain (1918 ed.), p. 404.

usucapion. Hence, under no circumstances should the limitation period pertaining to one of them be applied to the other, for this would be wrong.

We will assume, however, that what the appellants have meant to maintain is that their predecessor in interest had acquired the ownership of the aforesaid properties through ordinary possession for 10 years, and that, consequently, the plaintiff can not disturb this acquired right. But even this contention lacks merit, for in order to acquire ownership by ordinary prescription there are required, among other things, a just title and good faith. The plaintiff introduced oral and documentary evidence regarding the true nature of the transaction involved, to which the lower court accorded credit. Hence, if on the basis of such evidence, it was shown that the predecessor in interest of the appellants merely lent his name to be used in the execution of the deeds, it can not be successfully maintained that he had a just title and good faith. Besides, from the facts thus established, it is evident that there has been no *animus domini,* which is an indispensable requisite for the possession to serve as a basis for the prescription of ownership. See in this connection § 1841 of the Civil Code, which provides that acts of a possessory character exercised by virtue of the license of the owner or mere tolerance on his part, do not constitute possession.

It is urged that the lower court erred in not holding that the action brought was barred in accordance with § 1253 of the Civil Code, by reason of the fact that over four years had elapsed from the execution of the deeds to the filing of the complaint in this case.

The action brought by the plaintiff is not one for the annulment of the deeds, whereby the decedent, Ricardo Ramírez Morales, seemingly acquired in his own name properties which really belonged to his wife, as the same had been transferred or awarded to her in consideration of the assignments which she had previously executed covering her shares in the

estates of her father and mother, respectively. The purpose of the action is to show, as was shown by the evidence introduced and which the lower court believed, that the immovables involved in the controversy herein were transferred to the plaintiff in payment of her hereditary shares in the estates of her father Severiano Ramírez Colberg and of her mother Isolina Marini y Correa; that the husband of the plaintiff paid no consideration whatever for the transfer of the properties; and that the transfers of the 126.66-acre property and of the other property situated in Cabo Rojo were made nominally in favor of the husband of the plaintiff, at the request of the latter. The plaintiff in her testimony said: "I was the one who requested that they be put in his name; he being my husband, whom I fully trusted, I thought that it was better to put them in his name." This testimony was corroborated by the witnesses David Ramírez and Reynaldo Ramírez, who stated that decedent Ricardo Ramírez Morales had not paid anything for the properties; and that the latter were transferred to his name because it was so wished by the plaintiff.

We think that to the facts of this case is applicable the doctrine laid down by this court in *Porrata* v. *Fajardo Sugar Co.*, 57 P.R.R. 615, and *Ruiz* v. *Ruiz*, 61 P.R.R. 794.[2] In the latter case a father purchased a property and had the title conveyed to his oldest daughter, who agreed with him that as her brothers would become of age—they were then under age—she would convey to each of them title to a one-fifth undivided interest in the property. Upon her refusal to deliver the said undivided interests claimed by her brothers, the latter filed a complaint entitled "revendication of co-ownership and payment of fruits." In affirming the judgment in favor of the plaintiff brothers we relied on grounds other than those set forth by the lower court, and we said:

[2] See *Foreman* v. *Foreman*, 167 N.E. 428 (N.Y. 1929); 2 Restatement of the Law, Trusts, pp. 140 *et seq.*; 3 Bogert on Trusts, p. 1596.

518

"The fact that the plaintiffs have entitled their action 'revendication of co-ownership and payment of fruits' does not forbid us from deciding that in this case there exists a constructive trust, since this remedy is perfectly compatible with the allegations and the evidence. This was done in *Porrata* v. *Fajardo Sugar Company of P. R.,* 57 P.R.R. 628, where the constructive trust was not mentioned either in the title of the action or in the prayer of the complaint. This court, in order to do justice between the parties, nevertheless declared the existence of such a trust in that case."

A declaration that in this case there exists a constructive trust, that is, that Ricardo Ramírez Morales accepted and held the title to both properties as trustee for the benefit of his wife, the plaintiff, as *cestui que trust,* is perfectly compatible with the allegations and the evidence. Upon the death of her husband, the plaintiff acquired the right to claim as belonging to her separate estate the properties which she had acquired by inheritance from her parents and which she, "for reasons of delicacy," had caused to be conveyed to the name of her husband. Were we to hold otherwise, that is, that the properties acquired by Ricardo Ramírez belonged to the conjugal partnership which existed between him and the plaintiff, we would be upholding the unjust enrichment of the defendants at the expense of the plaintiff, who, in accordance with the evidence, is entitled to the properties which she claims, as she acquired them by inheritance from her parents.

Although for reasons different from those set forth by the lower court, the judgment appealed from should be affirmed.

Mr. Justice Córdova did not participate herein.